UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-61712-CIV-MORENO

CORRINE KUCHENBECKER and
THOMAS KUCHENBECKER,

   Plaintiffs,

vs.

JOHNSON & JOHNSON, and
ETHICON, INC.

   Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' PARTIAL MOTION TO DISMISS**

  Plaintiffs Corrine Kuchenbecker and Thomas Kuchenbecker commenced this lawsuit against Defendants Johnson & Johnson and Ethicon, Inc., seeking compensatory, economic, and punitive damages for injuries caused by complications from a transvaginal mesh device, known as the Gynecare TVT Abbrevo System, which was implanted in Plaintiff Corrine Kuchenbecker. The Plaintiffs' core claim is that the Defendants are liable in negligence and strict liability for defectively designing and manufacturing the Gynecare TVT Abbrevo System, and for failing to adequately warn consumers of known dangers and risks associated with using this system. Defendants moved to dismiss certain claims in the 12-count Complaint as failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Defendants' Partial Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the formal sufficiency of the allegations supporting claims for relief. Under Rule 12(b)(6), the Court "may dismiss a claim for 'failure to state a claim upon which relief can be granted.'" *Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1275 (S.D. Fla. 2013) (quoting Fed. R. Civ. P. 12(b)(6)). To survive dismissal, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. And those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

## II. DISCUSSION

### A. COUNTS I AND III – "DEFECTIVE MANUFACTURING"

The thrust of Plaintiffs' lawsuit is that the Defendants are liable in negligence and strict liability for defectively designing and manufacturing the Gynecare TVT Abbrevo System, and for failing to adequately warn consumers of known dangers and risks associated with using this system. Defendants request dismissal of the defective manufacturing claims in Counts I and III on grounds the Complaint amounts to "nothing more than a formulaic recitation of elements, bereft of factual support." (D.E. 5 at 4.)

Plaintiffs' defective manufacturing claims fall into two theories of liability: negligence and strict liability. The basic elements of a negligence cause of action apply equally to products liability manufacturing defect claims grounded in negligence. *See Colville v. Pharmacia & Upjohn Co. LLC*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008). A plaintiff must allege: (1) a duty of care was owed to the plaintiff; (2) defendant breached that duty of care (*i.e.* negligence); and (3) the breach of that duty of care was a proximate cause of the plaintiff's injuries. *Id.* In addition to these elements, a plaintiff must also establish that the product at issue was "defective or unreasonably dangerous." *Id.* (quoting *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1342 (M.D. Fla. 2003)). Likewise, a manufacturing defect claim grounded in strict liability requires that a plaintiff prove the product made by the manufacturer was defective or created an unreasonably dangerous condition that proximately caused the plaintiff's injury. *Id.* (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1258 (11th Cir. 2002)). And finally, under both theories of liability, a plaintiff must also demonstrate that "the injuries complained of were caused by a defective product whose defect existed at the time of injury and at the time in which the product left the manufacturer's control." *Id.* (quoting *Rodriguez v. Nat'l Detroit, Inc.*, 857 So. 2d 199, 201 (Fla. 3d DCA 2003)).

Here, the Court finds the Complaint fails to state a plausible claim for defective manufacturing under negligence and strict liability. The closest Plaintiffs come to alleging a manufacturing defect is the allegation that Defendants failed to "manufacture the Gynecare TVT Abbrevo System so as to avoid an unreasonable risk of harm to women in whom the Gynecare TVT Abbrevo System[s] were implanted, including the Plaintiff." (D.E. 1 at ¶ 116b.) But the only factual allegations offered to support this conclusion relate to the defective design and defective warning claims. *See id.* at ¶¶ 62a–62i, 74a–74r. And without pinpointing a single specific manufacturing defect (*i.e.* that the Gynecare TVT Abbrevo System, as manufactured,

- 3 -

deviated from the manufacturing specifications in some way), and explaining how that defect caused any of the alleged injuries, this allegation is simply another way of alleging defective design. The Complaint does allege that the Gynecare TVT Abbrevo System was "defective in its manufacture and construction when it left the hands of [Defendants] in that it deviated from Gynecare TVT Abbrevo System specifications." *Id.* at ¶ 125. But, again, the Complaint fails to specify how the device implanted in the Plaintiff deviated from manufacturing specifications. Without more, the Court simply cannot draw the reasonable inference that Defendants defectively manufactured the Gynecare TVT Abbrevo System that was implanted in the Plaintiff.

Therefore, even taking these allegations as true and viewing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs fail to allege a plausible manufacturing defect claim grounded in negligence or strict liability. Accordingly, Count I is **DISMISSED** to the extent it asserts a manufacturing defect claim,[1] and Count III is **DISMISSED** in its entirety.

### B. COUNT IV – "STRICT LIABILITY - DEFECTIVE PRODUCT"

In Count IV, Plaintiffs assert a strict liability claim for "defective product" on grounds the Gynecare TVT Abbrevo System was "defective and unreasonably dangerous to foreseeable consumers, patients, and users." *Id.* at ¶¶ 128–32. Defendants argue Count IV should be dismissed because Florida does not recognize "defective product" as a separate cause of action. Rather, Defendants assert that manufacturers can be held strictly liable for a defective product "by virtue of a design defect, a manufacturing defect, or an inadequate warning." (D.E. 5 at 5.)

Plaintiffs argue that Florida law has long recognized a claim for strict products liability based upon a defective product. (D.E. 10 at 4 (citing *West v. Caterpillar Tractor Co., Inc.*,

---

[1] In addition to alleging defective manufacturing, Plaintiffs' negligence claim in Count I also asserts Defendants negligently designed, and negligently warned consumers about risks associated with, the Gynecare TVT Abbrevo System. (*See* D.E. 1 at ¶¶ 116–18.)

- 4 -

336 So. 2d 80 (Fla. 1976).) While Plaintiffs are correct that *West* recognized the doctrine of strict liability for defective products, *see West*, 336 So. 2d at 87–88, subsequent case law makes clear that a plaintiff prevails on a defective product claim by showing the product is defective "*by virtue of* a design defect, a manufacturing defect, or a defective warning," *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998) (citing *Brown v. Glade & Grove Supply, Inc.*, 647 So. 2d 1033, 1035 (Fla. 4th DCA 1994)) (emphasis added). In other words, a defect in design, manufacture, or warning is a species of a strict product liability claim. Moreover, Plaintiffs' three sentence paragraph in support of Count IV does not cite any authority establishing that Florida courts recognize a strict liability "defective product" claim as a cause of action independent from strict liability defective design, manufacture, or warning claims. (*See generally* D.E. 10 at 4.) Therefore, the Court concludes that Plaintiffs' "defective product" claim is not a standalone cause of action under Florida law.

Furthermore, to the extent Florida law recognizes a strict liability "defective product" claim, as alleged, this claim is duplicative of Plaintiffs' strict liability claims for defective design (Count II) and for defective warning (Count V). "Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Manning v. Carnival Corp.*, No. 12-22258-CIV, 2012 WL 3962997, at *2 (S.D. Fla. Sept. 11, 2012) (quoting *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010)). "To promote judicial economy, a court 'should dismiss claims that are duplicative of other claims.'" *Id.* (quoting *Wultz*, 755 F. Supp. 2d at 81).

Here, in support of their "defective product" claim, Plaintiffs allege the Gynecare TVT Abbrevo System was "defective and unreasonably dangerous" (*i.e.* defective design) and "the warnings labels, and instructions were deficient" (*i.e.* defective warning). (D.E. 1 at ¶ 129.) Thus, because the "defective product" claim stems from identical allegations in other counts, and

will be decided under identical legal standards as those other counts, the Court also finds the "defective product" claim is duplicative of Plaintiffs' defective design and defective warning claims. For all these reasons, Count IV is **DISMISSED WITH PREJUDICE.**

### C. <u>COUNT VI – "NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS"</u>

In Count VI, Plaintiffs assert a claim for negligent infliction of emotional distress. Defendants argue this claim should be dismissed because Plaintiffs "do not identify any specific physical or emotional injury they have suffered as a result of Defendants' alleged negligence." (D.E. 5 at 6.)

To state a claim for negligent infliction of emotional distress under Florida law, a plaintiff must allege: (1) they suffered a physical injury; (2) the physical injury was caused by the psychological trauma; (3) they were involved in some way in the event causing the negligent injury to another; and (4) they have a close personal relationship with the directly injured person. *See Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995). The Florida Supreme Court has ruled that "intangible, mental injuries are insufficient to meet the physical injury required under the [physical] impact rule." *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 364 (Fla. 1995). The Florida Supreme Court has also ruled that general allegations of bodily injury are not sufficient to state a claim for negligent infliction of emotional distress. *See id.* (finding generalized allegations of "bodily injury including hypertension, pain and suffering" insufficient); *see also Godelia v. Doe 1*, 881 F.3d 1309, 1323 (11th Cir. 2018) (affirming district court's dismissal of negligent infliction of emotional distress claim under Florida law where plaintiffs made only "generalized allegations of muscle and stomach pain") (citing *R.J.*, 652 So. 2d at 364).

Here, Plaintiffs allege that, together, they suffered "severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, consortium, and economic damages," and that they "will continue to sustain emotional distress, severe physical injuries,

economic losses, and other damages" due to the implanted Gynecare TVT Abbrevo System. (D.E. 1 at ¶¶ 145–46.) Put simply, these allegations—including the allegations of intangible mental injuries, which, are insufficient to satisfy the physical impact requirement—are far too generalized to state a claim for negligent infliction of emotional distress. *See R.J.*, 652 So. 2d at 364; *Godelia*, 881 F.3d at 1323. In addition, Plaintiffs fail to allege factual matter establishing that any of the physical injuries were caused by psychological trauma. *See* D.E. 1 at ¶¶ 143–46; *Zell*, 665 So. 2d at 1054 (noting "the plaintiff's physical injury must be caused by the psychological trauma"). Therefore, Count VI is **DISMISSED**.

### D. COUNTS VII AND VIII – EXPRESS AND IMPLIED WARRANTIES

Plaintiffs also assert claims for breach of express warranty (Count VII) and breach of implied warranty (Count VIII). Defendants argue both counts must be dismissed for lack of contractual privity. (*See* D.E. 5 at 6–7.) Plaintiffs' Opposition memorandum does not address, let alone oppose, Defendants' arguments in support of dismissing these claims. (*See* D.E. 10.) Therefore, Defendants' Partial Motion to Dismiss these claims is **GRANTED BY DEFAULT**, and accordingly, Counts VII and VIII are **DISMISSED**.

### E. COUNT X – UNJUST ENRICHMENT

Next, Defendants move to dismiss Plaintiffs' claim for unjust enrichment on grounds that Plaintiffs have an adequate remedy in tort law. Although there is a general rule under Florida law that equitable remedies are not available when adequate legal remedies exist, this doctrine "does not apply to all claims for unjust enrichment." *See Martinez v. Steinger*, No. 05-61471, 2006 WL 8432187, at *3 (S.D. Fla. July 5, 2006) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998)). "It is only when an express contract is proven that an unjust enrichment claim must fail in this way." *Id.* (citing *Williams*, 725 So. 2d at 400; *Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997)).

Defendants specifically argue the unjust enrichment claim should be dismissed because the claim does not sound in contract or quasi-contract, and because Plaintiffs have an adequate legal remedy available in products liability. (D.E. 5 at 8.) The Court disagrees with this characterization. Plaintiffs allege that they "paid for the Gynecare TVT Abbrevo System," that Defendants "accepted payment by Plaintiffs and others on Plaintiffs' behalf for the purchase of the Gynecare TVT Abbrevo System," and that Plaintiffs "have not received the safe and effective medical devices for which they paid." (D.E. 1 at ¶¶ 167–69.) While a product defect underlies the unjust enrichment claim (*i.e.* a benefit was not conferred because the device was defective), these allegations sound primarily in contract because they extend beyond just the alleged defect, and center on the Defendants retaining the Plaintiffs' payment without the Defendants conferring a benefit. Furthermore, because the factual predicates for Plaintiffs' unjust enrichment claim differ from those predicates underlying their product liability claims, it is entirely possible that Plaintiffs' product liability claims ultimately fail, but that their unjust enrichment claim prevails. Thus, Plaintiffs are entitled to plead an equitable unjust enrichment claim as an alternative to their legal claims. *See Coastal Wellness Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1222 (S.D. Fla. 2018) ("Plaintiff may plead alternate theories of recovery including injunctive and declaratory relief even if a remedy at law is pled in another count.") (citing *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief.")).

Additionally, there are no alternative contract bases present that warrant dismissing the unjust enrichment claim: no party has pointed the Court to the existence of an express contract between Plaintiffs and Defendants; and the express and implied warranty claims sounding in contract have been dismissed, *see supra.*

For these reasons, the Court finds that at this stage it is premature to dismiss Plaintiffs' unjust enrichment claim on grounds they have an adequate legal remedy available in tort. Accordingly, Defendants' motion to dismiss Count X is **DENIED**.

### F. COUNT XII – "DISCOVERY RULE, TOLLING AND FRAUDULENT CONCEALMENT"

In Count XII, Plaintiffs attempt to assert a claim for "discovery rule, tolling and fraudulent concealment." (D.E. 1 at 41.) Defendants move to dismiss Count XII to the extent Plaintiffs attempt to: (1) "assert Florida's discovery rule as a distinct cause of action"; and (2) "assert a cause of action for fraudulent concealment." (D.E. 5 at 8.)

The Court agrees with Defendants. The Complaint explicitly states that Plaintiffs assert all applicable state statutory and common law rights and theories *"related to* tolling or extension of any applicable statute of limitations, including equitable tolling, class action tolling, delayed discovery, discovery rule, and fraudulent concealment." (D.E. 1 at ¶ 174 (emphasis added).) And all subsequent allegations in Count XII relate solely to tolling the statute of limitations. *See id.* at ¶ 175 ("Plaintiffs plead that the discovery rule should be applied to toll the running of the statute of limitations . . . ."); *id.* at ¶ 176 ("Under appropriate applications of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations period."); *id* at ¶ 177 ("The running of the statute of limitations in this cause is tolled due to equitable tolling. [Defendants] are estopped from asserting a statute of limitations defense due to [Defendants'] fraudulent concealment . . . .").

Finally, even if Count XII could be construed as asserting a cause of action for fraudulent concealment, Plaintiffs' allegations are not sufficient. To state a claim for fraudulent concealment under Florida law, a plaintiff must plead: (1) misrepresentation of material fact or suppression of the truth; (2) knowledge of the misrepresentation; (3) an intention that the representor induce

another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (quoting *Jones v. General Motors Corp.*, 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998)). Here, none of Plaintiffs' allegations in support of Count XII satisfy the required elements for a fraudulent concealment claim under Florida law—let alone satisfy with requisite specificity under Rule 9(b). (*See* D.E. 1 at ¶¶ 173–77.)

Therefore, Count XII is **DISMISSED** to the extent it attempts to assert a cause of action.

### III. CONCLUSION

For the foregoing reasons, it is

**ADJUDGED** that Defendants' Partial Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) The Motion is **GRANTED** as to Counts I (defective manufacturing claim only), III, IV, VI, VII, VIII, and XII. Counts I, III, VI, VII, VIII, and XII are **DISMISSED WITHOUT PREJUDICE**, and Count IV is **DISMISSED WITH PREJUDICE**; and

(2) The Motion is **DENIED** as to Count X. It is further

**ADJUDGED** that Defendants answer the remaining claims in Count I, Counts II and V (products liability claims), Count IX (gross negligence), Count X (unjust enrichment), and Count XI (loss of consortium), **no later than Monday, September 30, 2019**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ___13___ of September 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record